IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| RONNIE BRADFIELD a/k/a | ) | |
| PAUL FARNSWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13-1310-JDT-egb |
| | ) | |
| VS. | ) | |
| | ) | |
| MICHAEL DONAHUE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER ON PENDING MOTIONS,
MODIFYING SCHEDULING ORDER AND CONTINUING TRIAL,
AND DIRECTING THAT DEFENDANT MARTIN BE SERVED WITH PROCESS

On November 15, 2013, Plaintiff Ronnie Bradfield a/k/a Paul Farnsworth, Tennessee Department of Correction ("TDOC") prisoner number 219625, an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On May 29, 2014, the Court issued an order that, *inter alia*, denied Plaintiff's motion for a preliminary injunction or temporary restraining order, dismissed certain claims and parties, and directed that process be issued for several of the individual Defendants. (ECF No. 13.) All of the Defendants except for Helen Forbes have been served and have responded to the complaint.[1]

---

[1] The process issued for Forbes was returned unexecuted by the U.S. Marshal. (ECF No. 26.) The Marshal indicated that HCCF personnel had advised Forbes was an employee of Trinity Food Services, a company contracted to provide food services at the prison. The process sent to Forbes by certified mail had been delivered to other food services employees because Forbes was out on sick leave at the time; however, Forbes had since left the HCCF.

On August 28, 2014, Plaintiff renewed his motion for a preliminary injunction or temporary restraining order ("TRO") directing the Defendants to place him in a single-person cell free of environmental tobacco smoke ("ETS"), provide him with a gluten-free diet, and provide him with adequate medical care. (ECF No. 22.) Defendants responded in opposition on September 11, 2014 (ECF No. 24). On September 18, 2014, Plaintiff filed a motion for the Court to take judicial notice/reply (ECF No. 27), to which Defendants also filed a response (ECF No. 30). On October 23, 2014, Plaintiff filed yet another motion for the Court to take judicial notice/memorandum in support of his request for injunctive relief. (ECF No. 32.) Defendants responded to that motion as well. (ECF No. 33.)

In Plaintiff's motions to take judicial notice, it appears he is asking the Court to take judicial notice, pursuant to Federal Rule of Evidence 201(c)(2), of various case law, rules of civil procedure, and rules of evidence. Plaintiff also asks the Court to take judicial notice of various articles and information he has obtained from the internet and other sources regarding the effects of ETS.

Rule 201 provides standards for taking judicial notice of adjudicative *facts*, not law. The Court will fully consider the applicable law in deciding this matter; therefore, Plaintiff's motion in that regard is unnecessary. The Court also declines to take judicial notice of the information contained in the articles and other documents Plaintiff has submitted regarding the health hazards of ETS. As Defendants have pointed out, that type of information is generally required to be established through expert testimony. Therefore, the motions to take judicial notice are DENIED.

In the order of partial dismissal, the Court set forth the factors to be considered in addressing a request for preliminary injunctive relief:

> In determining whether to issue a temporary restraining order or preliminary injunction, a district court must consider the following four factors: "(1) whether the

2

> claimant has demonstrated a strong likelihood of success on the merits, (2) whether the claimant will suffer irreparable injury in the absence of a stay, (3) whether granting the stay will cause substantial harm to others, and (4) whether the public interest is best served by granting the stay." *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *see also Ne. Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (same). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see also Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) ("the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

(ECF No. 13 at 9-10.) In denying his initial request for such relief, the Court stated that "[t]he vague and conclusory allegations of Plaintiff's complaint are insufficient to satisfy the first two prongs" of this standard. (*Id.* at 10.) The Court noted that Plaintiff had offered no admissible evidence documenting a medical need for a smoke-free environment or showing that the amount of ETS to which he has been exposed is sufficient to endanger his health. (*Id.*)

In his renewed motion and supplemental memoranda, Plaintiff attempts to cure those deficiencies by providing his declaration, along with various exhibits. The exhibits, to which the Defendants have objected, include various unauthenticated medical records from as far back as 1993[2] (ECF No. 22-1 at 1-3, 5, 8-13, 17-22, 33-38; ECF No. 32-1); general information about celiac disease, ETS, and sinus problems printed from various internet websites (ECF No. 22-1 at 4, 6-7, 41-44; ECF Nos. 32-3, 32-4, 32-5 & 32-6); a copy of the table of contents and two pages from a Surgeon General's report on the health consequences of ETS (ECF No. 22-1 at 14-16); information that Plaintiff appears to have obtained from the U.S. Food and Drug Administration about the rules labeling of gluten-free foods (*id.* at 39-40); various documents and letters relating to grievances filed

---

[2] Some of the medical records are from when Plaintiff was housed at the West Tennessee State Penitentiary.

by Plaintiff (*id.* at 23-28); and other miscellaneous documents (*id.* at 29-32; ECF Nos. 32-1, 32-2 & 32-3).

Even if the Court considers the exhibits submitted by Plaintiff, he has not demonstrated that a preliminary injunction or TRO should issue. While Plaintiff may be able to show that he has had some degree of exposure to ETS at the HCCF, the evidence in the record still does not sufficiently show that his current medical needs are such that he requires a completely smoke-free environment. Therefore, Plaintiff has not shown a strong likelihood of success on the merits or that he will suffer irreparable harm if an injunction does not issue. The motion for injunctive relief is again DENIED.

On September 9, 2014, Plaintiff filed a motion to reconsider the order of partial dismissal and to amend the complaint. (ECF No. 23.) Defendants filed a response to the motion on September 23, 2014. (ECF No. 29.) Plaintiff is seeking to amend his claims against HCCF Warden Michael Donahue, Unit Manager Sheila Martin, and Family Nurse Practitioner Ollie Herron, in both their individual and official capacities.[3]

In the order of partial dismissal, the Court dismissed the claims against Defendant Donahue on the ground that Plaintiff had failed to allege that Donahue had the necessary personal involvement in the events at issue. (ECF No. 13 at 15-16.) Plaintiff now alleges that he approached Defendant Donahue on September 2, 2014, and gave him a note saying he needed to be moved because he was housed with a smoker and there was a lot of smoking in his current housing unit. He contends Donahue said, "Yeah, I know, I also got you[r] lawsuit," handed the note back to him and said "no." Plaintiff also alleges he sent Donahue a letter complaining that he needed to be

---

[3] The allegations in Plaintiff's proposed amendment do not sufficiently state a claim against Donahue, Martin, or Herron in their official capacities. Therefore, that aspect of Plaintiff's motion is DENIED.

4

housed in a single-cell, smoke-free environment and that Donahue "personally" responded to a grievance requesting that Plaintiff be in a single-cell, smoke-free environment. (ECF No. 23 at 3-4, ¶¶ 10-13.) Plaintiff contends this is sufficient to show the personal knowledge and involvement necessary to support liability under 42 U.S.C. § 1983.

As the Court stated in the prior order:

> A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. . . ."). Defendants Donahue and Woodall are not alleged to have had any personal involvement in the events at issue apart from their role in adjudicating Plaintiff's inmate grievance or their receipt of complaining letters.

(ECF No. 13 at 15-16.) In his proposed amendment, Plaintiff still has alleged only that Donahue acknowledged this ongoing lawsuit, received complaining notes and letters, and responded to grievances. That is not a sufficient allegation of personal involvement to support § 1983 liability. Therefore, the motion to amend is DENIED as to the claims against Defendant Donahue.

The Court dismissed the original claims against Defendant Martin because the only allegation against her was that she made comments about tobacco and drug smoke being detected in the air. (*Id.* at 18.) In the proposed amendment, Plaintiff alleges that he went to Martin's office on an unspecified date and told her that he had allergies to smoke that caused him health problems. Due to the amount of smoke in Unit M-A where he was housed, Plaintiff requested that he be moved to another unit. Plaintiff showed Martin prior medical orders for a non-smoking cell, which she verified on the TDOC computer system in his presence. Nevertheless, Martin failed to move Plaintiff out of the unit and failed to enforce the non-smoking policy. (ECF No. 23 at 8-9, ¶¶ 34, 36-38.)

5

The Court finds these allegations, while minimal, are sufficient to state a claim on which relief may be granted. Plaintiff allegedly talked to Martin in her office and explained his situation, provided her with medical information to support his request, and asked for her assistance. She allegedly acknowledged his need for a smoke-free cell.[4] Defendants contend that Plaintiff has no claim because he has no constitutional right to any specific type of cell assignment. However, Plaintiff's claim is not merely that Martin refused to assign him to a different cell, it is that her refusal to either move him or enforce the non-smoking policy amounted to deliberate indifference to a serious risk to his health. This aspect of Plaintiff's motion to amend is GRANTED, and process will be issued for Defendant Martin.

The original claims against Defendant Herron for denial of medical care were dismissed because the Court found that Plaintiff had not sufficiently alleged either the objective or subjective components of an Eighth Amendment claim. (ECF No. 13 at 12-13.) Plaintiff now alleges that he filed a grievance on June 3, 2014, complaining because he had submitted a sick-call slip several days before but had not yet been called to the clinic. (ECF No. 23 at 5, ¶¶ 16-17; ECF Nos. 23-1, 23-2, 23-3, 23-4 & 23-5.) At the end of the grievance process, Warden Donahue directed that Plaintiff be "seen by medical by 7/3/14." (ECF No. 23-5.) Plaintiff alleges that he was not called to the clinic until July 7, 2014, in violation of the Warden's directive. (ECF No. 23 at 5-6, ¶ 18; *id.* at 7, ¶ 22.) At that time, Plaintiff told Herron his current blood pressure medication was not working and asked that his medication be changed back to what he had taken previously. Herron did not do so, instead doubling the dose of Plaintiff's current medication. Plaintiff claims this has caused him to

---

[4] While the medical information Plaintiff gave Martin may not have been current, he alleges that she accepted the information after verifying it in the TDOC computer system.

have chest pains and an abnormal EKG and subjects him to the risk of a heart attack or stroke at any time. (*Id.* at 5-6, ¶¶ 18-19.)

The allegation that Herron did not change Plaintiff's medication to one that he specifically requested does not allege a violation of the Eighth Amendment. A prisoner is not entitled to the medical treatment of his choice. At most, the failure to change Plaintiff's medication could amount to medical malpractice.

Plaintiff further alleges that when he presented his handwritten list of health problems to Herron, she would not address them, telling him to sign up for sick-call. He claims this also violated the Warden's directive. (*Id.* at 6-7, ¶¶ 20, 22.) In dismissing the original claims against Herron, the Court addressed an almost identical allegation that she failed to address Plaintiff's list of health problems on an earlier occasion in 2013. The Court stated that Herron's "refus[al] to address a laundry list of additional complaints" did not preclude Plaintiff from signing up for sick call to seek treatment for additional illnesses or conditions. That is still true, and the additional allegation that Warden Donahue directed Plaintiff be seen by medical staff is irrelevant. Contrary to Plaintiff's suggestion, Donahue did not instruct the medical staff to address any particular problems or take any specific action. (ECF No. 23-5.) Even if he had, the mere failure to follow such a directive would not constitute deliberate indifference on the part of Herron because Donahue is not a trained medical provider who is authorized to direct Plaintiff's treatment.

Furthermore, other than his high blood pressure, Plaintiff has not alleged that any of the medical conditions on the list he gave Herron (ECF No. 23-6) were objectively serious and demanded immediate medical attention. He also has not alleged that Herron's failure to address

7

those conditions on July 7, 2014, had any actual adverse affect on his health. He alleges only that there was a "possible risk of future health damage and problems." (ECF No. 23 at 7, ¶ 24.)

The allegations in Plaintiff's proposed amendment do not state a claim against Herron for a denial of adequate medical care. Therefore, the motion to amend is DENIED as to the claims against Defendant Herron.

On September 16, 2014, Plaintiff filed a motion for entry of default against Defendant Forbes. (ECF No. 25.) However, as stated, Forbes has not been served with process. (*Supra*, at 1 n.1.) Therefore, the motion for entry of default is DENIED. Plaintiff then filed motions asking the Court to require production of her last known home address. (ECF No. 36 & 43.) Those motions are GRANTED. A separate order to issue a third-party subpoena will be entered.

Plaintiff filed a motion to compel discovery from Defendants Dickerson and Golden on January 7, 2015 (ECF No. 37) and a second motion to compel further discovery from Defendant Dickerson on January 30, 2015 (ECF No. 41). Defendants have responded to both motions. (ECF Nos. 40 & 47.) The Court will not set out and address each disputed discovery request in this order. However, after carefully considering each request and the parties' separate contentions, the Court finds that Plaintiff's motions are not well taken. The Defendants' answers and/or objections to Plaintiff's discovery requests are sufficient for the reasons set out in the Defendants' responses. Therefore, Plaintiff's motions to compel discovery are DENIED.

On February 12, 2015, Plaintiff filed a motion for an extension of time, through March 30, 2015, in which to respond to Defendants' discovery requests and to file another motion to compel. (ECF No. 46.) He contended that HCCF had been on lockdown "for days," preventing access to the library and his stored legal materials. In their response (ECF No. 49), Defendants dispute that

statement, asserting that the prison did not go on lockdown until February 8, 2015, the same day Plaintiff executed his motion. Nevertheless, Defendants state they do not oppose a short extension of time for Plaintiff to respond to discovery and file a motion to compel. Defendants also filed a motion to amend the scheduling order. (ECF No. 50.)

Plaintiff's motion for an extension is GRANTED, and he shall have fourteen (14) days from the date of this order in which to serve his responses to Defendants' discovery and to file a motion to compel. Defendants' motion to amend the scheduling order is also GRANTED. **The discovery deadline in this case is extended to May 31, 2015, and the motion deadline is extended to June 30, 2015.** The pretrial order deadline of July 10, 2015, and the trial currently set for July 20, 2015, are hereby CONTINUED and will be reset by the Clerk.

In accordance with the foregoing discussion:

Plaintiff's motion for a preliminary injunction or TRO and his motions to take judicial notice are DENIED. (ECF Nos. 22, 27 & 32.)

Plaintiff's motion to reconsider and amend is GRANTED only as to Defendant Martin, as indicated above. (ECF No. 23.)

Plaintiff's motion for entry of default is DENIED, but his motions to obtain the current address of Defendant Forbes are GRANTED. (ECF Nos. 25, 36 & 43).

Plaintiff's motions to compel discovery are DENIED. (ECF Nos. 37 & 41.)

Plaintiff's motion for extension of time and Defendants' motion to amend the scheduling order are GRANTED. (ECF Nos. 46 & 50.)

Plaintiff's various motions asking the Court to rule are now MOOT. (ECF Nos. 35, 38 & 45.)

It is ORDERED that the Clerk shall issue process for Defendant Sheila Martin and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Martin pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rule of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. Service shall include a copy of Docket Entry 23 and a copy of this order. All costs of service shall be advanced by the United States.
IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE